David Eugene POWERS, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00034–CR.

Court of Appeals of Texas,
Texarkana.

Jan. 7, 1999.

Paul Tatum, Holt & Tatum, Nacogdoches, for appellant.

Nicole D. Lostracco, Assistant District Attorney, Tim James, District Attorney's Office, Nacogdoches, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

ROSS, Justice.

David Eugene Powers appeals his conviction for manslaughter, contending that the trial court erred in: (1) receiving and accepting a fatally defective jury verdict finding him guilty of the offense of involuntary manslaughter; (2) substituting its judgment of manslaughter for the jury's uncorrected verdict of involuntary manslaughter; and (3) failing to define "reasonable doubt" in the punishment charge.

Powers' first point, that the trial court erred in accepting the jury verdict of involuntary manslaughter, is based on his contention that the verdict was void because there was no such offense in the Penal Code at the time of his alleged offense. Powers was tried for murder. The indictment alleged that he committed that offense on or about December 18, 1996. In the charge to the jury on guilt/innocence, the court instructed the jury on the offense of murder, as well as on the lesser offense of "involuntary manslaughter." The court instructed the jury that "involuntary manslaughter" occurs when a person recklessly causes the death of an individual. The jury found Powers guilty of the lesser offense. In the charge to the jury on punishment, the court then changed its terminology and used the term "manslaughter" instead of the term "involuntary manslaughter." Following the jury's assessment of punishment, the court entered a judgment reflecting a conviction for manslaughter.

Powers is correct in his contention that, at the time of the commission of this offense, there was no offense in the Penal Code with the heading of "involuntary manslaughter." There was such a heading in the Penal Code before September 1, 1994, which defined involuntary manslaughter to include recklessly causing the death of an individual. Act of May 29, 1993, 73rd Leg., R.S., ch. 900, 1.01, 1993 Tex. Gen. Laws 3586, 3614. In 1993, the Penal Code was amended, effective September 1, 1994, to include the offense of recklessly causing the death of an individual under a one-word heading of "Manslaughter." Tex Pen. Code Ann. 19.04(a) (Vernon 1994).

■ Powers is incorrect, however, in his assertion that the trial court's mistaken reference to "involuntary manslaughter" in its jury charge is reversible error. Tex. Gov't Code Ann. § 311.024 (Vernon 1998) governs how the heading of a statute is to be considered: "The heading of a title, subtitle, chapter, subchapter, or section does not limit or expand the meaning of a statute." This provision applies to construction of the Penal Code. Tex. Pen.Code Ann. 1.05(b) (Vernon 1994). Since the court correctly defined the offense of manslaughter in its charge, the erroneous reference to "involuntary manslaughter"could not limit or expand that definition.

In *Turner v. State*, 701 S.W.2d 932, 933 (Tex.App.-Beaumont1985), rev'd and remanded, 726 S.W.2d 140 (Tex.Crim.App.1987),on remand, 732 S.W.2d 91, 92 (Tex.App.-Beaumont 1987, no pet.), the appellant made an argument similar to the one made by Powers. Turner was charged with "Aggravated Sexual Assault," but a jury found him guilty of "Aggravated Sexual Assault of a Child." Turner, 701 S.W.2d at 933. Turner argued that there was no such offense as "Aggravated Sexual Assault on a Child" in the Penal Code and that his conviction should be reversed. *Turner*, 732 S.W.2d at 93. The Court of Appeals rejected his argument and concluded that:

> no harm to Appellant was done simply by incorrectly stating the title of an offense. This was a mere clerical mistake; it can be cured. We decide the charge was correct; hence, this clerical error is not reversible error.

*Turner*, 732 S.W.2d at 93.

Likewise, we believe the inclusion of the word "involuntary" in front of the word "manslaughter" was merely a clerical error which was cured by the court when discovered. The language used in the court's charge defining "involuntary manslaughter" is exactly the same language used to define "manslaughter" in Section 19.04(a). Thus, it appears the trial court simply made a clerical error and the charge as a whole correctly stated the law.

■ We also note that even if this mistake had been reversible error, as Powers contends, he did not preserve it for review. In order to preserve error relating to the jury charge, the defendant is required to object and obtain an adverse ruling as required by Article 36.14[1] or he must request a special instruction as authorized by Article 36.15.[2] See Tex.R.App.P. 33.1; *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex.Crim.App. 1996); *Castillo v. State*, 944 S.W.2d 440, 442 (Tex.App.-Houston[14th Dist.] 1997, no pet.). Otherwise, he must prove fundamental error in the jury charge by showing egregious harm, i.e., error so egregious and creating such harm that he did not receive a fair and impartial trial. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984); *Castillo*, 944 S.W.2d at 442–43. Further, an improper verdict which is not objected to when it is read at trial and accepted by the court is reviewed under the *Almanza* egregious harm standard. *Hawkins v. State*, 745 S.W.2d 511, 512–13 (Tex.App.-Fort Worth 1988, pet. ref'd).

■ The record reveals that Powers did not object to the proposed jury charge, did not request a special charge, and made no objection to the jury verdict. Having thus

---

1. Tex.Code Crim. Proc. Ann. art. 36.14 (Vernon Supp.1999) (Charge of Court) states (in relevant part):

    Before said charge is read to the jury, the defendant or his counsel shall have a reasonable time to examine the same and he shall present his objections thereto in writing, distinctly specifying each ground of objection. . . . The requirement that the objections to the court's charge be in writing will be complied with if the objections are dictated to the court reporter in the presence of the court and the state's counsel, before the reading of the court's charge to the jury.

2. Tex.Code Crim. Proc. Ann. art. 36.15 (Vernon Supp.1999) (Requested Special Charges) reads (in relevant part):

    Before the court reads his charge to the jury, counsel on both sides shall have a reasonable time to present written instructions and ask that they be given to the jury. . . . The defendant may, by a special requested instruction, call the trial court's attention to error in the charge, as well as omissions therefrom, and no other exception or objection to the court's charge shall be necessary to preserve any error reflected by any special requested instruction which the trial court refuses.

waived error, he must show that the error caused him egregious harm in order to merit reversal of his conviction. It has been held that an inadvertent or clerical error in an instruction does not require reversal of a conviction where the charge as a whole correctly states the law, applies the law to the facts, and requires proof beyond a reasonable doubt of each element of the offense. *Lozano v. State*, 676 S.W.2d 433, 437 (Tex.App.-Waco 1984, no pet.); see also *Woods v. State*, 139 Tex.Crim. 631, 141 S.W.2d 318, 318–19(1940). Here, the abstract definition given for "involuntarymanslaughter" in the court's charge tracked the language in the Penal Code defining "manslaughter." The court then instructed the jury that, if they found beyond a reasonable doubt that Powers recklessly caused the death of his victim, they should find him guilty of the lesser offense of "involuntary manslaughter." In finding him guilty of the lesser offense, we presume the jury followed the court's definition of that offense and hold that the court's clerical mistake in misnaming that offense did not amount to egregious harm so as to require reversal of his conviction.

■ In his second point of error, Powers contends that the court committed reversible error by substituting the word "manslaughter" for "involuntary manslaughter" in the court's judgment. Tex.Code Crim. Proc. Ann. art. 42.01, 1(13) (Vernon Supp.1999) states that the judgment should reflect the offense or offenses for which the defendant was convicted. Here, Powers was convicted of recklessly causing the death of an individual. The judgment did not substitute one offense, involuntary manslaughter, for another, manslaughter. Rather, we have determined that insertion of the word "involuntary" in the court's charge was a clerical error which the judge could and did correct. The trial court properly carried this correction forward in its judgment of conviction.

In his third point, Powers contends that the court committed reversible error in its charge to the jury on punishment. At the punishment phase, the State offered proof of punishment enhancement allegations in the indictment, and the court charged the jury to determine if these allegations were true "be-

yond areasonable doubt." However, the charge to the jury on punishment did not contain a definition of the term "reasonable doubt" or refer to any prior instructions of the court. After finding the punishment enhancement allegations true, the jury set Powers' punishment at imprisonment for ninety-nine years.

■ The State argues that Powers did not preserve this alleged error because he neither requested a charge including such a definition nor objected to its absence. See Tex.Code Crim.Proc. Ann. arts. 36.14 and 36.15; Tex.R.App. P. 33.1; *Vasquez v. State*, 919 S.W.2d 433, 435 (Tex.Crim.App.1996). Powers, on the other hand, relies on the recent case of *Martinez v. State*,969 S.W.2d 139 (Tex.App.-Fort Worth 1998, no pet. h.). In that case, Martinez pled guilty to the charged offense, but he pled not true to the enhancement allegation at the punishment phase of the trial. In its charge on the enhancement allegation, the trial court instructed the jury to determine whether the allegation was true beyond a reasonable doubt, but failed to define reasonable doubt. The Fort Worth Court of Appeals held that, although Martinez did not request an instruction including the definition or object to its omission, it was automatic reversible error to fail to include the definition. In reaching its decision, the court noted that Martinez had pled guilty to the charged offense and there had been no guilt/innocence phase of the trial. Thus, "[w]ithout the benefit of the standard instruction on reasonable doubt, the jury faced the same uncertainty of what that burden meant that prompted the *Geesa* decision." *Martinez*, at 140. The *Geesa* decision mandated a jury instruction at the guilt/innocence phase that explained the State's burden of proof and defined "beyond a reasonable doubt." *Geesa v. State*, 820 S.W.2d 154, 161–62 (Tex.Crim.App.1991); *Martinez*, at 139–40.

The instant case, however, is distinguishable from *Martinez*. Here, Powers did not plead guilty to the charged offense and had a full jury trial on the issue of guilt/innocence, where the jury was instructed on the definition of reasonable doubt. Therefore, the jury was familiar with that definition and

used it in determining Powers' guilt. The jury was not in the same position as in the *Geesa* and *Martinez* cases, where the juries did not have a full definition of reasonable doubt and had never before seen the definition.

This issue was recently addressed by this Court in *McQueen v. State*, 984 S.W.2d 712 (Tex.App.-Texarkana 1998, no pet. h.). McQueen contended that automatic reversal was required where the trial court failed to charge the jury at the punishment stage as to the burden of proof (reasonable doubt) required for consideration of extraneous offense evidence, even where she did not request such an instruction. McQueen based her argument on the recent case of *Huizar v. State*, 966 S.W.2d 702 (Tex.App.-San Antonio 1998, pet.granted). The *Huizar* court held that it was error for the trial court to fail to charge the jury at the punishment phase with a general and specific reasonable doubt instruction and that error was preserved for review even though appellant did not request an instruction on reasonable doubt. *Huizar*, 966 S.W.2d at 707–09. Citing *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex.Crim.App. 1994), the court then used the harmless error standard of Tex.R.App. P. 81(b)(2) (Vernon 1997),[3] rather than the egregious harm standard set forth in the *Almanza* case, to determine whether or not the error was harmful. The court reasoned that the *Almanza* analysis applies only to violations of Code of Criminal Procedure Articles 36.14 through 36.18 that do not implicate state or federal constitutional rights. *Huizar*, 966 S.W.2d at 709. Because a reasonable doubt instruction is based on state and federal constitutional rights, the court held that a Rule 44.2 harmless error analysis was required. Id.

In addressing McQueen's contentions, however, we relied upon *Mitchell v. State*, 931 S.W.2d 950, 954 (Tex.Crim.App.1996), and held that the trial court is required to give an instruction on reasonable doubt in the punishment phase only if the defendant requests the instruction, and that the Texas Court of Criminal Appeals would have specifically addressed the matter if it had wanted to impose a duty upon trial courts to include the in-

struction sua sponte. Further, we held that even if such a duty exists, a trial court should not be reversed unless the defendant brings the error to the court's attention. See *Tow v.State*, 953 S.W.2d 546, 548 (Tex.App.-Fort Worth 1997, no pet.)(holding that a defendant who neither requests a reasonable doubt instruction in the punishment charge nor objects to its absence fails to preserve error for review), and *Castillo*, 944 S.W.2d at 442 (holding that in order to preserve error relating to the jury charge, the appellant must either object or request a charge).

■ The record here reflects that Powers neither requested a special instruction on the definition of "reasonable doubt" in the court's charge on punishment, nor objected to the absence of such an instruction. Therefore, he waived error. When the appellant does not preserve jury charge error by failing either to object to the charge or to request a charge, he must then prove fundamental error by showing egregious harm, i.e., error so egregious and creating such harm that he did not receive a fair and impartial trial. *Cormier v. State*, 955 S.W.2d 161, 163 (Tex.App.-Austin 1997, no pet.); *Castillo*, 944 S.W.2d at 442–43(citing *Almanza*, 686 S.W.2d at 171). To determine this, the record is examined as a whole:

> [T]he actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole.

*Almanza*, 686 S.W.2d at 171; *Castillo*, 944 S.W.2d at 443.

■ Applying these standards, we cannot say that the failure of the trial court to include the definition of "reasonable doubt" in the punishment charge denied Powers a fair and impartial trial. The court's charge at the guilt/innocence phase did define reasonable doubt as required by *Geesa*. Further, the trial court instructed the jury that it was the State's burden to prove the enhancement allegations beyond a reasonable doubt. Only a few hours passed between the

---

**3.** Now found at Tex.R.App. P. 44.2(a).

jury's deliberation on guilt/innocence and on punishment. There is no reason to believe the jury did not remember the definition of reasonable doubt, since it had so recently applied it in the guilt/innocence phase of the trial. It is significant that this is exactly what Powers' counsel urged the jury to do in his closing argument to the jury on punishment:

The Charge says that before you find this fellow was previously convicted he was the same fellow who was convicted on the date set forth in their pleadings. . . .

You heard the testimony. And you're going to have to decide whether or not the State has proved beyond a reasonable doubt—and you will recall the Charge the Court gave you previously about beyond a reasonable doubt, and that applies to this too. Each and every element that they've alleged in those enhancements has got to be established in your mind beyond a reasonable doubt. They alleged it, make them prove it.

(Emphasis added).

The Austin Court of Appeals recently wrote on a similar situation. *Cormier*, 955 S.W.2d 161. A jury found Cormier guilty of the charged offense and assessed his punishment. In its punishment charge, the trial court instructed the jury not to consider evidence of an extraneous crime unless it found and believed beyond a reasonable doubt that Cormier committed it or was criminally responsible for it. *Cormier*, 955 S.W.2d at 162–63. However, the court failed to define the term "reasonable doubt" in the punishment charge. Cormier neither requested this definitional instruction nor objected to its absence. *Cormier*, 955 S.W.2d at 163. The Austin court noted that under the *Almanza* case, an appellant who complains of charge error for the first time on appeal must demonstrate egregious harm. *Id.* The Court then opined that, although it was aware of no statute or opinion creating an absolute systemic requirement that "reasonable doubt" be defined in the punishment charge, if the trial court was required to define it in the punishment charge, even in the absence of the defendant's request, the failure to do so was error requiring reversal

only upon a showing of egregious harm. *Id.* The court found no egregious harm, partly because the jury had begun its punishment deliberations less than twenty-four hours after it had been instructed on the definition of reasonable doubt in the guilt/innocence phase, even though the guilt/innocence phase had ended on the day before the punishment phase began the next morning. *Cormier*, 955 S.W.2d at 163–64.

Applying the *Cormier* standards, we find that Powers has failed to demonstrate egregious harm. Only a few hours elapsed (on the same day) between the time the jury was instructed on the definition of reasonable doubt in the court's charge on guilt/innocence and the time the jury commenced its deliberations on punishment. Powers' own counsel exhorted the jury to recall that definition when it deliberated on the enhancement allegations. We hold that if the trial court did err in failing to include the definition of reasonable doubt in its punishment charge, Powers has not met his burden of showing that the error deprived him of a fair and impartial trial so as to require reversal. His third point of error is overruled.

The judgment is affirmed.